```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             |
EARL SCOTT and HELEN SCOTT                                   |
                                                             |     NOT FOR PUBLICATION
                                          Plaintiffs,        |     **MEMORANDUM & ORDER**
                                                             |
              - against -                                    |     01-CV-5910 (CBA)
                                                             |
"JOHN DOE CORPORATION,"                                      |
d/b/a "DAYS INN"                                             |
                                                             |
                                          Defendant.         |
                                                             |
-------------------------------------------------------------X
AMON, UNITED STATES DISTRICT JUDGE
```

      Before the Court is a motion by plaintiffs Earl and Helen Scott ("the Scotts") for damages against defaulting defendant John Doe Corporation d/b/a Days Inn in this diversity case. On July 1, 2004, the Court referred the matter to the Honorable Joan M. Azrack, United States Magistrate Judge, for a damages inquest and preparation of a report and recommendation ("R&R") pursuant to Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b). On March 18, 2005, Magistrate Judge Azrack recommended that damages be awarded in the amount of $10,154. On April 4, 2005, the Court referred the matter back to Magistrate Judge Azrack to hear testimony by Earl Scott's physician. The Court has received Magistrate Judge Azrack's supplemental report, which adheres to her earlier recommendation that damages be awarded in the amount of $10,154, and the Scotts' objections thereto. For the reasons stated below, the Court adopts the R&R in part and rejects it in part, and concludes that damages should be awarded in the amount of $13,154.

1

**I.      Objection 1: Corporate Ownership**

The Scotts first object to statement in the March 18, 2005[1] Report and Recommendation regarding the corporate ownership of the Days Inn motel where the events leading to this action occurred. (See R&R 2, March 18, 2005.) Magistrate Judge Azrack's R&R notes that "[a]t the time of the Scotts' stay at the motel, the Days Inn was owned and operated by N.S. Hotel Corporation," and that the hotel was later sold to Cubs Hotel, LLC. The Scotts argue that these facts have not been established in this matter. The facts in this case were established by the defendant's default, which was deemed to be an admission of the facts alleged in the complaint, except for any facts relating to damages. Greyhound Exhibitgroup v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). The complaint did not allege the corporate ownership set forth in the R&R, and no evidence regarding the corporate ownership was ever introduced in this case. The Court therefore construes the R&R to merely recount these facts as part of its narrative of the case, and not to make a formal finding regarding the defendant's corporate ownership.

**II.     Objection 2: Mr. Scott's Testimony**

The Scotts next object that the R&R improperly summarized Mr. Scott's testimony as stating that he had trouble lifting "his attache case" without assistance, when the record shows that he testified that he required assistance lifting "cases" containing his work materials. The Court agrees, although the significance of this objection is unclear.

**III.    Objection 3: Mrs. Scott's Testimony**

The Scotts also object that the R&R's summary of Mrs. Scott's testimony omitted the "full

---

[1] The Scotts' objections incorrectly refer to the R&R of "March 18, 2003." (See Scott Objections ¶ 1, July 6, 2005.) The R&R in question was issued in 2005.

2

detail" of her testimony regarding the impact the accident has had upon her life, including the emotional strain placed upon the Scotts' marital relationship by his injury and "her perception" of his subsequent depression. Mrs. Scott's testimony was more detailed, but the R&R provides a sufficient summary. The Court fails to see how this provides the basis for a valid objection.

## IV. Objection 4: Sick Time

The Scotts's fourth objection challenges the R&R's conclusion that they are not entitled to compensation for the days of sick leave which Mr. Scott was forced to use in recovery for his injury. The simple fact is that the Scotts failed to carry their burden of establishing their entitlement to damages for the loss of these days. See O'Connor v. Rosenblatt, 714 N.Y.S.2d 327, 328 (N.Y. App. Div. 2000) (holding burden of establishing damages for lost earnings falls on plaintiff). The record contains no information regarding the number of sick days Mr. Scott had accumulated when the accident occurred, the number of days he had remaining when he retired, or how the sick leave was 'banked' pending use or retirement (e.g. whether or not there was a cap on the number of days that could be accumulated). The Court therefore has no basis for determining whether or not Mr. Scott should be compensated for his use of sick days in relation to this accident.

## V. Objection 5: Pain and Suffering

The Scotts object to the R&R's award of $7,000 for pain and suffering as "shockingly low." (Pl.'s Objs. 4, July 6, 2005.) Upon *de novo* review of the record in this case and awards made in comparable cases, the Court finds the award to be somewhat low, but not shockingly so.

The March 18, 2005 R&R found that Mr. Scott suffered a compression fracture of his L4 vertebra and multiple levels of lumbar disc injury when he fell while exiting the shower on

defendant's premises. (R&R 2, March 18, 2005.) Mr. Scott testified that he suffered severe pain upon and after the accident. After returning home, Mr. Scott scheduled an appointment with his orthopedist, Dr. Bryk, and also sought treatment at a hospital emergency room as a result of the pain he felt. Mr. Scott then underwent physical therapy at Dr. Bryk's direction, which Mr. Scott found to be painful. He also found himself unable to perform certain work-related tasks he had previously performed, such as climbing stairs and carrying cases of work materials without assistance. His employer accommodated these limitations. As the R&R notes, Mr. Scott testified that the injury limited his ability to participate in a wide range of actions, such as hiking, vacuuming, and marital relations. (R&R 4, March 18, 2005.)

Dr. Bryk testified that a fall in a bathtub could cause a compression fracture of the type Mr. Scott suffered, and that such an injury would be painful and could constrict motion in the spine. He also testified, however, that patients of Mr. Scott's age who suffer such injuries generally recover fully, and that Mr. Scott's testimony that he suffered continued pain and restrictions on his movement would not be consistent with a compression fracture. (Tr. 17, May 31, 2005.) Reviewing his records, Dr. Bryk stated that he "imagine[d]" Mr. Scott was "doing pretty well" by October 20, 1998, about six weeks after the accident, and that Mr. Scott never returned for any follow-up treatment.[2] (Id. at 17–18.) The Court concludes from this testimony, and from the documentary evidence submitted by the Scotts, that Mr. Scott suffered pain and suffering as a result of the compression fracture of his L4 vertebra through approximately October

---

[2] The Scotts contend that Magistrate Judge Azrack's "personal disdain" for Dr. Bryk led her to "wholly discount" his testimony. (Pl.'s Objs. 7–8, July 6, 2005.) To the contrary, Magistrate Judge Azrack gave significant weight to Dr. Bryk's testimony, but found that his testimony did not support the Scotts' position. The Court agrees, and finds the Scotts' objection to be unfounded.

20, 1998.  The record does not support a finding that Mr. Scott continues to suffer any pain that can be attributed to this injury rather than to his pre-existing back problems or other causes.

Awards for pain and suffering from similar injuries span a wide range in New York, depending upon such obvious factors as the severity and duration of the pain.  The Scotts, who initially sought $5,00,000 for damages suffered by Mr. Scott, contend that $7,000 is far too low and award.  (See Comp. ¶ 18.)

In Estevez v. United States, 72 F. Supp. 2d 205 (S.D.N.Y. 1999), the court awarded $150,000 for pain and suffering to an automobile passenger who suffered a compression fracture of his L1 vertebra.  The fracture in that case, however, was dramatically more serious than that in this case because it resulted in a 25% loss in height of the posterior portion of the vertebra and a permanent 15 degree angulation of the plaintiff's spine.  Id. at 213.  In addition, the plaintiff had to wear a back brace for three and a half months, and continued to wear a corset as a back brace through trial, and remained unable to do any heavy lifting.  Id.

In 1962, a court in the Southern District of New York awarded $12,500 for past and future pain and suffering to a plaintiff who had suffered compression fractures of two lumbar vertebrae but had fully recovered.[3]  Calderone v. Naviera Vacuba, S/A, 204 F. Supp. 783, 792–93 (S.D.N.Y. 1962).  The plaintiff in that case, however, missed fourteen months of work while recovering recover from his injuries, whereas Mr. Scott missed only one month.  Id.

These cases evidence more serious injuries than those suffered by the plaintiff here.  The

---

[3] According to an inflation calculator provided by the Bureau of Labor Statistics of the United States Department of Labor, that award would be worth approximately $84,000 today. See Consumer Price Index Inflation Calculator, Bureau of Labor Statistics, at http://data.bls.gov/cgi-bin/cpicalc.pl (last visited July 27, 2006).

Scott's proposed figure of $100,000 for each year since the accident and each year of Mr. Scott's expected remaining lifespan is unwarranted by the record, which does not substantiate any continuing suffering traceable to the accident. Nonetheless, an award of $7,000 for Mr. Scott's pain and suffering is somewhat low. The Court therefore awards $10,000 for Mr. Scott's past pain and suffering, and nothing for future pain and suffering.

**VI.     Objection 6: Mrs. Scott's Loss of Services**

The Scotts object that the R&R's award of $1,000 for Mrs. Scott's loss of services is too low. The Court disagrees. The Court has already found that the Scotts failed to establish that Mr. Scott suffered long-term injuries traceable to the accident. Therefore, Mrs. Scott is entitled only to damages for the period in which Mr. Scott was out of work and/or recovering from the accident. She testified that during this period she stayed at home with him "some days," took him to his various medical appointments, had to significantly readjust her schedule, and that he was irritable.[4] (Tr. 45, Feb. 23, 2005.) The Court is satisfied that $1,000 adequately compensates her for these injuries.

**VII.     Hearing**

The Scotts have requested that the Court conduct further hearings as part of its *de novo* review of the record. They do not, however, explain what additional evidence they would present at such a hearing, or explain why such evidence was not initially presented to Magistrate Judge Azrack. For that reason, and after its own careful review of the record, the Court concludes that further hearings are not warranted. See 28 U.S.C. § 636(b) (committing receipt of additional

---

[4] The allusions to problems with marital relations was far to vague to attach any weight or, indeed, credibility, to those concerns.

6

evidence to district court judge's discretion); Fed. R. Civ. P. 72(b) (same); <u>United States v. Raddatz</u>, 447 U.S. 667, 676 (1980) (holding 28 U.S.C. § 636(b)(1) does not require district court to conduct additional hearings or rehear any witnesses); <u>Hynes v. Squillace</u>, 143 F.3d 653, 656 (2d Cir. 1998) ("[W]e have upheld the exercise of the district court's discretion in refusing to allow supplementation of the record upon the district court's de novo review.").

**VIII. Conclusion**

The Court adopts Magistrate Judge Azrack's R&Rs with the modifications discussed above. Accordingly, the Court awards the Scotts damages against the defaulting defendant in the amount of $13,154, representing $10,000 for Mr. Scott's pain and suffering, $2154 in medical expenses, and $1,000 for Mrs. Scott's loss of services and anguish. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

Dated: Brooklyn, New York
August 8, 2006

Carol Bagley Amon
United States District Judge